FILED

2018 Feb-26  PM 04:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

**JET/JSK: MARCH 2018**
**GJ#8**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ALABAMA

## <u>NORTHEASTERN DIVISION</u>

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **BRIAN ROBERT SODI,** | ) |
| a/k/a "Mailman" | ) |

FILED by _____ D.C.

MAR 0 8 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIA.

### I N D I C T M E N T

The Grand Jury charges that:

### <u>INTRODUCTION</u>

1.    From in and around 2012 through in and around 2013, all dates inclusive, the defendant, **BRIAN ROBERT SODI**, a/k/a "Mailman," committed a series of frauds involving the promotion of penny stocks. **BRIAN ROBERT SODI** used his Florida-based publishing houses to distribute misleading and deceptive promotional mailers recommending the purchase of select penny stocks, while also concealing from potential investors that he was secretly selling the stocks he was urging others to buy. **BRIAN ROBERT SODI** obscured his involvement in the scheme by using offshore accounts and intermediaries to launder the proceeds of his fraud back to himself and his publishing houses.

1

<u>Persons, Entities, and Definitions</u>

2.    At all times relevant to this Indictment:

      a.    Scalping is a scheme and artifice to defraud in which a defendant obtains ownership of stock, recommends that others purchase the stock without disclosing the defendant's ownership and intention to sell, and subsequently sells the stock for his own benefit.

      b.    A pump-and-dump is a scheme and artifice to defraud in which the defendant obtains stock, artificially manipulates and inflates the price of the stock, usually through the dissemination of misleading and false positive statements about the stock, and then sells the stock on the open market for a profit at a higher price.

      c.    The defendant, **BRIAN ROBERT SODI**, known to others involved in penny stock fraud as "Mailman," personally controlled companies Capital Financial Media, LLC (CFM), List Data Solutions, LLC (LDS), GLJ Holdings, LLC (GLJ), Trinity Investment Research, LLC (TIR), and other companies using the same business address in Delray Beach, Florida. **BRIAN ROBERT SODI** and his entities were involved in penny stock promotions, primarily through the distribution of mailers by postal mail, email, and online advertising.

d.      Cooperating Witness 1 (CW-1) and Cooperating Witness 2 (CW-2) were co-conspirators with **BRIAN ROBERT SODI** as described below.

e.      Arliss International, Inc. (Arliss) was a corporate entity incorporated in the British Virgin Islands in and around October 2009. **BRIAN ROBERT SODI** used Arliss to scalp stock during the pump-and-dump schemes described in this Indictment. Although Arliss's manager was nominally an official of EuroHelvetia Trustco S.A. (EHT), a wealth administration firm headquartered in Geneva, Switzerland, Arliss was in fact used by and operated for the benefit of **BRIAN ROBERT SODI**.

f.      Southern USA Resources, Inc. (SUSA) was a Delaware corporation doing business in Ashland, Alabama, in Clay County, within the Northern District of Alabama. From in and around 2012 to in and around 2013, SUSA operated a gold mine in the Northern District of Alabama. SUSA registered its common stock with the U.S. Securities and Exchange Commission (SEC) under Section 12 of the Securities Exchange Act of 1934 on or about May 10, 2012. SUSA securities were quoted on OTC Link, an electronic inter-dealer quotation system for over-the-counter securities, under the ticker

3

symbol "SUSA." SUSA shares were available for public trading until on or about March 1, 2013, when the SEC issued an order suspending trading in SUSA stock. **BRIAN ROBERT SODI** used Arliss to scalp SUSA stock during a promotion by **BRIAN ROBERT SODI**'s publishing houses that was executed from in and around 2012 to in and around 2013. On or about November 22, 2013, the SEC revoked SUSA's registration for various violations of the securities laws.

g.      Great Wall Builders Ltd. (GWBU) was a Texas corporation. GWBU common stock was registered with the SEC under Exchange Act Section 12(g) and was quoted on OTC Link under the ticker symbol "GWBU." **BRIAN ROBERT SODI** used Arliss to scalp GWBU stock during a promotion by **BRIAN ROBERT SODI**'s publishing houses in and around 2012.

h.      Potash America, Inc. (PTAM) was a Nevada corporation headquartered in Boca Raton, Florida (originally named Adtomize Inc.). PTAM common stock was registered with the SEC under Exchange Act Section 12(g) and was quoted on OTC Link under the ticker symbol "PTAM." **BRIAN ROBERT SODI** used Arliss to scalp PTAM stock during a promotion by his publishing houses in and around 2012.

     i.     Goff, Corp. (GOFF) was a Nevada corporation headquartered in Cork City, Ireland. GOFF common stock was registered with the SEC under Exchange Act Section 12(g). **BRIAN ROBERT SODI** used Arliss to scalp GOFF stock during a promotion run by his publishing houses in and around 2013. GOFF securities were quoted on OTC Link under the ticker symbol "GOFF" and were available for public trading until on or about June 29, 2013, when GOFF terminated its stock registration.

## THE SCHEME AND ARTIFICE TO DEFRAUD

3.    From in and around 2012 to in and around 2013, all dates inclusive, the defendant, **BRIAN ROBERT SODI**, devised and intended to devise a scheme to defraud and obtain money and property by means of false and fraudulent pretenses and representations.

4.    It was a part of the scheme that **BRIAN ROBERT SODI** would acquire shares of a publicly-traded stock, positioning himself to benefit from selling the shares at inflated prices. Sometimes he would acquire the stock on the open market; other times he would acquire the stock privately through a convertible promissory note that allowed the note's principal to be converted into publicly-tradeable shares of stock.

5.      It was further a part of the scheme that **BRIAN ROBERT SODI** would try to induce the public to purchase the stock by developing and disseminating promotional and marketing mailers that exaggerated the stock's prospects for growth and urged readers to purchase it.

6.      It was further a part of the scheme that **BRIAN ROBERT SODI**'s mailers would falsely, deceptively, and misleadingly conceal and fail to disclose the material fact that **BRIAN ROBERT SODI** intended to sell the very stock that he was urging others to buy.

7.      It was further a part of the scheme that **BRIAN ROBERT SODI**, through his publishing houses, would use postal mail to send the mailers throughout the United States. **BRIAN ROBERT SODI** would also use electronic mail and online advertising to promote the stock.

8.      It was further a part of the scheme that sometimes, accomplices and co-conspirators of **BRIAN ROBERT SODI**, both known and unknown to the Grand Jury, would use "match trading," i.e., coordinated transactions designed to manipulate the stock price, to deceive investors into believing that the public was actively trading in the stock.

9.      It was further a part of the scheme that after the stock price rose, **BRIAN ROBERT SODI** would sell the stock for a profit.

10.    It was further a part of the scheme that **BRIAN ROBERT SODI** would conceal his ownership interest in the promoted stock by trading through Arliss, a Swiss account, instead of through a brokerage account held in his own name.

11.    It was further a part of the scheme that **BRIAN ROBERT SODI** would repatriate the proceeds to himself and his publishing houses through offshore accounts held by firms in Switzerland, the Cayman Islands, and elsewhere.

## THE CONSPIRACY TO COMMIT SECURITIES FRAUD

12.    From in and around 2012 through in and around 2013, all dates inclusive, **BRIAN ROBERT SODI**, together with CW-1, CW-2, and others known and unknown to the Grand Jury, conspired to defraud investors in the Northern District of Alabama and elsewhere through the fraud scheme described above by executing trades of SUSA stock.

### The Objects of the Conspiracy

13.    An object of the conspiracy was to commit securities fraud by scalping SUSA stock, as described below, in violation of Title 18, United States Code, Section 1348.

14.    Another object of the conspiracy was to commit securities fraud through a pump-and-dump of SUSA stock, as described below, in violation of Title 18, United States Code, Section 1348.

7

15.     Another object of the conspiracy was to commit mail fraud by using the U.S. Postal Service to deliver promotional mailers to potential investors for the purpose of inflating the price of SUSA stock in connection with the securities fraud scheme, as described below, in violation of Title 18, United States Code, Section 1341.

16.     Another object of the conspiracy was to commit securities fraud in violation of Title 15, United States Code, Sections 77q(a) and 77x.

17.     Another object of the conspiracy was to conceal **BRIAN ROBERT SODI**'s trading in SUSA stock during the promotion through money laundering.

<u>The SUSA Promotion</u>

18.     CW-1 and other co-conspirators acquired control of SUSA's freely tradeable shares of stock. During mid-2012, CW-1 approached **BRIAN ROBERT SODI** to propose that he promote SUSA stock so that the co-conspirators could sell stock. **BRIAN ROBERT SODI** agreed to join the scheme, agreed to be paid in SUSA shares instead of cash, and further agreed that he would trade his SUSA stock in the name of an offshore entity, not himself.

19.     On or about August 14, 2012, CW-1 forwarded to **BRIAN ROBERT SODI** an email from a SUSA executive containing a link to a news article about gold mining in the southeastern United States.

8

20. A few weeks later, on or about September 4, 2012, **BRIAN ROBERT SODI** sent two of his employees an email with the subject line "call for Alabama gold deal" and provided them with information regarding a scheduled conference call to discuss the promotion.

21. On or about September 24, 2012, one of **BRIAN ROBERT SODI**'s employees emailed two Word documents to **SODI** containing a preliminary draft of what would eventually become the SUSA mailer, with key facts and numbers left blank.

22. On or about September 28, 2012, one of **BRIAN ROBERT SODI**'s employees emailed a link to the SUSA website to **SODI**, noting that "[t]hey wanted [**SODI**] to have a look at it" and that **SODI** had "given them some advice on content."

23. In the fall of 2012, and in furtherance of the scheme, **BRIAN ROBERT SODI** and other members of the conspiracy traveled to SUSA's mining operation in Ashland, Alabama, within the Northern District of Alabama, to obtain information about SUSA.

24. On or about October 31, 2012, and in furtherance of the conspiracy between CW-1 and **BRIAN ROBERT SODI**, CW-1's company executed an agreement assigning to Arliss $120,000 in principal owed on a convertible promissory note that could be converted to shares of SUSA. In return, Arliss agreed

to pay CW-1's company a nominal amount of money. The agreement was executed on behalf of Arliss by a resident of Switzerland and a principal of EHT. On or about December 18, 2012, Arliss submitted a "Notice of Conversion" converting half of the principal on the convertible note into 1.5 million SUSA shares and requested delivery of those shares to Arliss's Swiss account. As further described below, Arliss would later sell those shares on the open market and return the proceeds to **BRIAN ROBERT SODI**.

25.     From on or about November 13, 2012, to December 19, 2012, an employee of one of **BRIAN ROBERT SODI**'s publishing houses sent various revised drafts of the SUSA mailers to **BRIAN ROBERT SODI** for approval. **BRIAN ROBERT SODI** subsequently approved the final draft of the SUSA mailer.

26.     On or about January 10, 2013, and in furtherance of the scheme, **BRIAN ROBERT SODI** used postal mail to send 1,000,260 mailers promoting SUSA stock to addresses throughout the country. **BRIAN ROBERT SODI** sent the mailer to addresses in Huntsville and Birmingham, within the Northern District of Alabama, to test whether the mailing to those postal delivery areas had been successful.

27.     The mailer contained numerous deceptive and misleading statements about SUSA's success in mining gold. For instance, **BRIAN ROBERT SODI**'s mailer claimed that the SUSA gold mining operation was "America's Most Prolific

Gold Discovery in a Decade," "the only public mining company" in Alabama, "mining at a breakneck pace," and that the mine could extract "up to 147 ounces [of gold] per day." In fact, SUSA was not the only public mining company in Alabama, and had sold only a few ounces of gold despite months of mining operations.

28. **BRIAN ROBERT SODI**'s mailer also contained numerous misleading claims about the potential future value of SUSA stock. For instance, the mailer, which was styled "Rising Stock Advisor," asserted that the company's land holdings "potentially [contained] $BILLIONS worth of gold," that investment in SUSA would offer a chance to invest in a "potential Billion dollar company that makes mostly PROFIT!", that investment in SUSA could "QUADRUPLE your money," and that SUSA was "Setting Themselves Up For Record-Breaking Profits!" The mailer claimed that "Southern USA Resources is as close to a sure thing as I've ever seen!" The mailer urged investors to "Do yourself a favor and consider grabbing as many shares of SUSA as you can comfortably afford today . . . You'll be glad you did!"

29. **BRIAN ROBERT SODI**'s mailer also contained numerous misleading statements about SUSA's financial situation. For instance, the mailer claimed that SUSA "doesn't need ANY financing to start operations or begin production." In fact, in 2012 and 2013, SUSA had so little revenue that it was unable to sustain business operations without additional funds from investors.

11

30.     Moreover, the "Important Notice and Disclaimer" at the end of **BRIAN ROBERT SODI**'s mailer was false, fraudulent and misleading. For instance, the disclaimer asserted that **BRIAN ROBERT SODI**'s publishing house would be paid $900,000 by "Core International Co., LTD" for the mailer. In fact, it was Arliss, not "Core International Co., LTD," that paid **BRIAN ROBERT SODI**'s publishing houses through various entities, including entities controlled by CW-1 and CW-2.

31.     Moreover, the disclaimer failed to disclose that the compensation to be paid to **BRIAN ROBERT SODI** and his publishing houses included 1.5 million shares of SUSA stock, and that **BRIAN ROBERT SODI** intended to secretly sell those shares after the promotion began. The disclaimer also failed to disclose that **BRIAN ROBERT SODI**, CW-1 and their co-conspirators had effectively cornered the market on SUSA stock and intended to dump shares during the promotion.

32.     On or about March 1, 2013, after the price and volume of trading in SUSA stock had dramatically increased as a result of the promotion, the SEC issued an order suspending trading in SUSA stock. SUSA subsequently laid off most of its workers and suspended its gold mining operations in Alabama.

33.     On or about November 22, 2013, the SEC revoked SUSA's registration for various violations of securities laws.

<u>Sodi Uses Arliss to Conceal Proceeds from SUSA Scalping</u>

34.    To conceal the fact that he was scalping SUSA stock for his own benefit, **BRIAN ROBERT SODI** used Arliss to acquire and sell shares of SUSA. Shortly thereafter, **BRIAN ROBERT SODI** laundered the proceeds back to an account controlled by one of his publishing houses.

35.    On or about December 6, 2012, Arliss wired $120,000 to the trust account of the escrow agent for the SUSA convertible note assignment. On or about December 17, 2012, the escrow agent wired $166,600 to CW-1's company. On or about December 28, 2012, CW-1's company wired $125,000 to a Cayman Islands account used by CW-2's company to launder money with a reference to "Core International Co. Ltd." On January 8, 2013, CW-2's Cayman Islands account wired $100,000 to **BRIAN ROBERT SODI**'s CFM bank account in Florida.

36.    On or about December 18, 2012, approximately one month before the SUSA mailers were delivered to recipients in the Northern District of Alabama and elsewhere, and under the direction of **BRIAN ROBERT SODI,** Arliss converted half of the convertible promissory note to 1.5 million shares of SUSA common stock and requested that the shares be delivered to a Swiss account held in the name of Arliss.

37.    Between on or about January 16, 2013, and on or about January 28, 2013, **BRIAN ROBERT SODI** used Arliss to sell approximately 239,600 shares of

SUSA common stock on the open market, as directed and coordinated by CW-1, for approximately $338,056.14 in proceeds.

38.    Several weeks later, on or about February 25, 2013, Arliss sent a wire transfer for $525,000 (the proceeds of the SUSA trades combined with funds received from another entity) to CW-2's Cayman Islands account with a reference to "Core International Co Ltd.," the entity listed in the mailer's disclaimer as having purportedly funded the promotion. Two days later, CW-2's Cayman Islands account wired the money from Arliss (minus a fee retained by CW-2) to **BRIAN ROBERT SODI**'s company LDS. LDS, in turn, listed those funds as income for the SUSA project.

39.    On or about April 25, 2013, approximately seven weeks after the U.S. Securities and Exchange Commission ordered a halt to trading in SUSA stock, the Arliss account transferred 1,260,400 SUSA shares to an account in Singapore, precisely the number of shares from the note converted in December 2012 that remained unsold.

## OTHER EXECUTIONS OF THE SCHEME IN 2012 AND 2013

40.    During 2012 and 2013, **BRIAN ROBERT SODI** scalped three other stocks, namely, PTAM, GWBU, and GOFF, as further described below:

14

| Approximate Date | Description of Transaction | Price | Approximate Proceeds |
|---|---|---|---|
| 4/24/2012 | Shipped 648,259 mailers promoting PTAM | N/A | N/A |
| 4/25/2012 | Shipped 101,821 mailers promoting PTAM | N/A | N/A |
| 4/25/2012 | Sold 10,000 PTAM shares | $0.962 | $9,386.05 |
| 4/25/2012 | Sold 10,000 PTAM shares | $0.97 | $9,465.93 |
| 4/27/2012 | Sold 15,500 PTAM shares | $0.9831 | $14,953.10 |
| 5/3/2012 | Sold 35,000 PTAM shares | $0.9453 | $32,595.70 |
| 5/4/2012 | Sold 10,000 PTAM shares | $0.9574 | $9,341.08 |
| 5/7/2012 | Sold 20,000 PTAM shares | $1.0188 | $20,033.11 |
| 5/8/2012 | Sold 10,000 PTAM shares | $0.945 | $9,219.42 |
| 5/9/2012 | Sold 10,000 PTAM shares | $0.7892 | $7,664.22 |
| 5/10/2012 | Sold 15,000 PTAM shares | $0.4484 | $6,500.19 |
| 5/11/2012 | Shipped 1,000,000 mailers promoting GWBU | N/A | N/A |
| 5/14/2012 | Bought 50,000 GWBU shares | $0.62125 | N/A |
| 5/14/2012 | Bought 50,000 GWBU shares | $0.838 | $42,489.03 |
| 5/15/2012 | Bought 65,000 GWBU shares | $0.74856 | N/A |
| 5/15/2012 | Sold 5,000 PTAM shares | $0.4998 | $2,281.26 |
| 5/16/2012 | Sold 80,000 GWBU shares | $1.4737 | $116,434.25 |
| 5/18/2012 | Sold 2,500 GWBU shares | $1.5455 | $3,646.63 |
| 5/18/2012 | Sold 82,500 GWBU shares | $1.51 | $123,036.73 |
| 3/19/2013 | Bought 500,000 GOFF shares | $0.2422 | N/A |
| 3/19/2013 | Shipped 1,200,117 mailers promoting GOFF | N/A | N/A |
| 4/2/2013 | Sold 13,000 GOFF shares | $0.3001 | $3,683.97 |
| 4/2/2013 | Sold 300,000 GOFF shares | $0.49998 | $148,165.59 |
| 4/3/2013 | Shipped 800,112 mailers promoting GOFF | N/A | N/A |
| 4/3/2013 | Sold 200,000 GOFF shares | $0.4365 | $86,190.78 |
| 4/5/2013 | Bought 100,000 GOFF shares | $0.52 | N/A |
| 4/6/2013 | Sold 100,000 GOFF shares | $0.59 | $58,214.39 |

41.     In each case, **BRIAN ROBERT SODI** concealed his intention to trade in the promoted stock and used Arliss to conceal his ownership and sales of the very stocks that his publishing houses were urging the public to buy.

**COUNT ONE:**     **[18 U.S.C. § 1349]**

The Grand Jury charges that:

42.     The allegations set forth in paragraphs 1 through 41 are incorporated as if set forth herein.

43.     From in and around 2012, and continuing thereafter until on or about March 1, 2013, more exact dates being unknown to the Grand Jury, in Madison County, Jefferson County, and Clay County, within the Northern District of Alabama, and elsewhere, the defendant,

**BRIAN ROBERT SODI**, a/k/a "Mailman,"

did knowingly and intentionally conspire, with others known and unknown to the Grand Jury, to execute and attempt to execute a scheme and artifice to defraud any person, including investors in the Northern District of Alabama, and to obtain by means of false and fraudulent pretenses, representations, and promises, money and property, in connection with the purchase and sale of shares of Southern USA Resources, Inc., traded under the ticker "SUSA," a commodity for future delivery and a security of an issuer with a class of securities registered under Section 12 of

16

the Securities Exchange Act of 1934 (Title 15, United States Code, Section 78l), all

in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO through EIGHT:   [18 U.S.C. § 1348]

The Grand Jury charges that:

44.     The allegations set forth in paragraphs 1 through 41 are incorporated as

if set forth herein.

45.     On or about the dates below, within the Northern District of Alabama,

the defendant,

### BRIAN ROBERT SODI, a/k/a "Mailman,"

together with others known and unknown to the Grand Jury, aiding and abetting one

another, did knowingly and intentionally, and in connection with any commodity for

future delivery and any security of an issuer with a class of securities registered

under Section 12 of the Securities Exchange Act of 1934 (Title 15, United States

Code, Section 78l), namely, Southern USA Resources, Inc., traded under the ticker

"SUSA," execute and attempt to execute the above-described scheme and artifice to

defraud any person, including investors in the Northern District of Alabama, and to

obtain, by means of false and fraudulent pretenses, representations, and promises,

money and property, each count further described as follows:

| Count | Approximate Date | Description of Transaction | Price/Share | Proceeds |
|-------|------------------|----------------------------|-------------|----------|
| 2 | 1/21/2013 | Sold 50,000 SUSA shares | $1.224 | $60,389.04 |

| 3 | 1/24/2013 | Sold 29,500 SUSA shares | $1.4382 | $41,831.54 |
| 4 | 1/25/2013 | Sold 20,000 SUSA shares | $1.20 | $23,815.78 |
| 5 | 1/25/2013 | Sold 30,400 SUSA shares | $1.4771 | $44,279.34 |
| 6 | 1/25/2013 | Sold 30,000 SUSA shares | $1.30 | $38,443.37 |
| 7 | 1/28/2013 | Sold 54,700 SUSA shares | $1.595 | $88,135.40 |
| 8 | 1/29/2013 | Sold 25,000 SUSA shares | $1.87 | $41,161.67 |

All in violation of Title 18, United States Code, Section 1348.

**COUNT NINE:**   **[15 U.S.C. §§ 77q(a), 77x]**

The Grand Jury charges that:

46.   The allegations set forth in paragraphs 1 through 41 and Counts TWO through EIGHT are re-alleged and incorporated by reference as though fully set forth herein.

47.   On or about January 10, 2013, in Madison County and Jefferson County, within the Northern District of Alabama, and elsewhere, the defendant,

**BRIAN ROBERT SODI**, a/k/a "Mailman,"

together with others known and unknown to the Grand Jury, aiding and abetting one another, in the offer and sale of shares of Southern USA Resources, Inc., traded under the ticker "SUSA," by the use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly, willfully and knowingly, did employ a device, scheme, and artifice to defraud, and to obtain money and property by means of any untrue statement of a material fact and an omission to state a material fact necessary in order to make the

18

statements made, in light of the circumstances under which they were made, not misleading, and engage in any transaction, practice, and course of business which operates and would operate as a fraud and deceit upon the purchaser, namely: the sending of approximately 1,000,260 false and fraudulent mailers promoting SUSA stock in furtherance of the above-described conspiracy and scheme and in connection with the sales of SUSA stock, as described in Counts ONE through EIGHT, in violation of Title 15, United States Code, Sections 77q(a) and 77x.

**COUNT TEN:**    [18 U.S.C. § 1341]

The Grand Jury charges that:

48.    The allegations set forth in paragraphs 1 through 41 and Counts TWO through NINE are re-alleged and incorporated by reference as though fully set forth herein.

49.    On or about January 10, 2013, within the Northern District of Alabama and elsewhere, the defendant,

**BRIAN ROBERT SODI**, a/k/a "Mailman,"

together with others known and unknown to the Grand Jury, aiding and abetting one another, having knowingly devised and intending to devise and participate in the above scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, and representations, knowing of its fraudulent nature, and for the purpose of executing such scheme and artifice and

attempting so to do, did cause to be delivered by mail and private and commercial interstate carrier, according to the direction thereon, approximately 1,000,260 mailers promoting the stock of Southern USA Resources, Inc., traded under the ticker "SUSA," in violation of Title 18, United States Code, Section 1341.

### <u>NOTICE OF FORFEITURE</u>

1.     The allegations contained in Counts ONE through TEN of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.     Upon conviction of the offenses set forth in Counts ONE through TEN of this Indictment, the defendant,

### BRIAN ROBERT SODI, a/k/a "Mailman,"

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

3.     If any of the property described above, as a result of any act or omission of the defendant:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

A TRUE BILL

*/s/ Electronic Signature*
FOREPERSON OF THE GRAND JURY

                              JAY E. TOWN
                              United States Attorney

                              */s/ Electronic Signature*
                              JONATHAN S. KEIM
                              Assistant United States Attorney